Good morning. May it please the court. My name is Trish Hines, and I'm representing Appellant Officer Peter Prolo, seeking reversal of the district court's order denying him qualified immunity. I would like to reserve two minutes rebuttal time, if I may. This case is about an officer's decision to take three children whom he came upon and found abandoned, and place them into emergency protective custody, and after following California's statutory scheme outlining a peace officer's duties upon finding these abandoned children, to the T, the question that this case presents is thus. After a warrantless seizure is made of neglected and abandoned children, at what point does a peace officer have to post hoc go back and obtain a warrant in order to extend the seizure? That's certainly one way to frame the issue, but the issue that concerns at least this judge is whether your client was under any obligation to conduct an investigation of the ability of the father to take the children into custody, to take control of the children, without potential harm to the children. That certainly is an issue present in this case, isn't it? Absolutely, Your Honor. And we acknowledge that there is a Fourteenth Amendment right for between a parent and child. However, that's not an absolute right, and there is a balancing that must be done here. And the evidence did your client have that the father, it would be inappropriate to turn the children over to the father? I'd like to answer that in two parts, if I may. And the first part is he came upon these children, one of whom was the father. We absolutely know everything about the decision to take them into protective custody when the young child, the infant, I think it was, was found alone in a car on a hot day in a locked car. There's just no question about that. But the question is, having made the decision to protect the children, which appears to me to have been justified, whether the what obligation he had to determine whether the father could take the children and they would be safe with him. Your Honor, I would answer that with, again, two parts. First is, the California statutory scheme is not the constitutionality of 305, Welfare and Institutions Code, is not being questioned here. And that's what Officer Prollo was following. After finding abandoned children, he tried to contact a parent, which was Mrs. Fredenberg, and he interviewed her. She lied about the boys being home alone. He completed that interview. He attempted to have the father contacted. And while the father is disputing that, what's undisputed and material for this qualified immunity analysis is the fact that an officer came to Officer Prollo and said, I spoke to the father, I explained what's going on with his wife, with his kids, he's refusing to come to the station to pick them up. Officer Prollo was going to do that. Scalia. Well, just a minute, just a minute. Let me ask you a question, because you're getting pretty, pretty avid about this. But I can't take what Officer Prollo believes to be the facts in this situation as the facts, because he's moving for summary judgment. As I understand the other side of the facts, that, yes, he took the children. One went to the hospital and then came back with the social worker. The other two, another officer got from the house. But then, that they didn't contact necessarily just the father, but they contacted the father's parents and the father. And that at the time that the decision was made to, if you will, give them to the social worker, that the father was at the police station playing with the children. The parents were at the police station playing with the children. And then he decides to give the kids to the social worker. Those are the facts they suggest. Now, tell me, given 306A, where it says, the police officer shall first attempt to contact the child's parent or guardian to determine if the parent or guardian is able to assume custody of the child, tell me why that does not mean in this situation there was a breach. I think, Your Honor, what this means is that this is a case where qualified immunity applies because it's not clear. Officer Prollo followed this to the letter, and he thought that contact he read the black and white letter of this statute, and it says, and parents. So you're going with prong two of the Saussure analysis? I think that's a violation of a constitutional right. You're really looking at prong two. He wouldn't have known about it? Is that what you're telling us? I think we certainly get there and that he is entitled to qualified immunity under that prong. However, I do think he's entitled to qualified immunity under the first prong. I don't believe that it was clearly established in August of 2006 that he was required in this situation, in these – given these facts, to contact the father affirmatively. But that's a second prong analysis. You really jumped right to the second prong analysis. It wasn't clearly established in that day. Now, you got the very judge who wrote pretty much on this issue sitting here. So I'm suggesting to you, can you really say there's not a violation, at least for summary judgment purposes, when the father is right there at the station, given the facts I have to look at? I think the answer to that respectfully is, yes, summary judgment is appropriate here, and it's appropriate because under the balancing test, these kids, and again, no question, they were seized the moment they were found abandoned. That's the seizure. That's when that took place. When Polo finishes his investigation, including contacting the father who's refusing to come to the station, he has already moved on to California Welfare and Institutions Code section 305a, which says that after contacting a parent, he immediately has to turn these kids over to contact a social worker and turn them over to the social worker. That's what he did. Ms. Quartz has showed up at the hospital. I think I still have the same question my colleague does, and that is, was the decision to turn the children over to the social worker made before or after the father was at the station? We're saying that it was made before father arrived at the station. However, for qualified immunity purposes, assuming that that fact might be in dispute, which I don't believe it is, I think in the record it shows clearly when Polo made that decision, and it's before Mr. Fredenberg showed up at the station. However, even if he did show up at the station, the social worker was already there. The kids were already in the social worker's custody. So was it clearly established? The question is, was it clearly established in August of 2006, did Officer Polo need to go and wrest jurisdiction back from the county and open up a new investigation under 305? That becomes the issue in this case. And I am looking at the case law that talks about abandon, abuse, neglected kids. What the clock's not running. I noticed that. What most of the case law does talk about is what is an imminent danger, what is imminent risk. And that is, in the cases that have discussed this, there's been a delay between investigation and then making the emergency protective custody. We don't have that here. And what another distinguishing factor is that a lot of these cases talk about how the abuse came to the knowledge of the officials in the first place. And that was a third-party anonymous tipster. We don't have that in this case either. In this case, Officer Polo shows up. There is a 7-month-old locked in a car on a 90-degree day, screaming. Mrs. Fredenberg lies about her two boys being home alone, an 8-year-old and a 2-year-old. Roberts, are you arguing that the circumstances that caused the officer to initially take custody of the children, standing alone, removed any requirement to investigate whether it would be appropriate to turn the children over to the father? In a sense, yes. The exigency here, the circumstances facing Officer Polo, justified his actions. What evidence did Officer Polo have that the father was in any way involved in the circumstances he initially encountered at the shopping center? During his interview with Mrs. Fredenberg, he learned that she homeschools the children, they're home alone with her, these three kids, all day, every day, during the week. The parents made this decision that she is in charge of their welfare and care during the week, every day. He had that fact in front of him. In addition, I don't know. That tells me that the father may well have participated in the decision to homeschool the children. My question is, what evidence did the officer have that the father was somehow involved in the condition he encountered at the shopping center, the officer? Other than just finding this child abandoned and no one around, that was his first indication that something is clearly wrong here. I'm asking about the father. Correct. There's no question. He comes to the shopping center. The mother's left the child in the car, locked in the car. No question there's a problem. He needs to act. In fact, my question is, what information at that point did he have that suggested the father was somehow responsible for the condition he found at the shopping center? He has the father's refusal to come and pick up the kids after learning about what all the circumstances that have been going on. But that was after the situation that he discovered at the shopping center, correct? Right.  So you're relying on the fact that he refused to come to the station? In part. However, I don't – I'd like to make two points, if I may. Sure. The first is, when we're talking about what is clearly established, and I recognize the vast knowledge that I'm speaking to up here, but when we're talking about a right that is clearly established, it's not the general constitutional guarantee that we're talking about. So, of course, the Fourteenth Amendment due process is clearly established. But what we're actually talking about is its application in the particular context. And again, going back to 305 and employing this balancing test, 305 is meant to be a transitory, temporary custodial State. And what is meant to happen, and what did happen in this case, is Officer Prolo turns the kids over to the county, and immediately their responsibility is to review the decision made by the officer, who's not usually in the best place to make decisions that impact a family, immediately review this emergency protective custody decision. And she could veto it or override it. And she – Well, I guess my worry is that in this particular situation, given the statute as I look at it, the statute suggests that in cases in which the child is left unattended, the peace officer shall first attempt to contact the child's parent or guardian to determine if the parent or guardian is able to assume the custody of the child. And it seems to me the issue in front of us is where it says attempt to contact the child's parent or guardian is, is that just the mother? Or is that the mother and the father? That's the question. Yes. Now, the problem comes in that that doesn't have anything to do with whether the police officer for the protection of the child has already taken them. That has to do with what should the police officer do? That's what the statute suggests. And I guess on that issue, I'm having it's still a tough time understanding given the facts the plaintiff argues. Now, I'm not saying you don't have facts on the other side. That the father is sitting right there at the station. His parents are there. That he has no duty under this statute to at least talk to them. And determine if they are able to assume the custody. You're suggesting that simply because the child is left unattended, the only one the police officer should contact is the mother. That's what you're saying. No need to talk to the father, given the facts that the plaintiff suggests. So that's my worry. Now, the second prong, quite a different story, which I can ask questions about. But I guess based on the statute, and then it says if the parent or guardian cannot be contacted, then the police officer notifies the social worker. So in that instance, they could have been contacted. The father was sitting right there. Under these circumstances, though, Your Honor, we're not saying that a parent means mother. We're just saying a parent simply means a parent. Any parent. Any parent, yes. Even though he's about to give the custody of those children to the social worker. I think that's where I'm not doing such a great job of pointing to the record. And it's our contention that the record shows that this decision, and jurisdiction in custody, was already ceded to the county by the time father arrived at the station. So that even if he does So just by the police officer taking him, they already have the custody? The emergency. This temporary custody that the police officer even thinks he only has, he doesn't even argue he has custody. He only argues he's temporarily taken them in order to decide what to do. Right. To conduct his investigation. And he turns, at the conclusion of his investigation, he turns them over to the county. And this occurs before father arrives at the station. Suppose in this case, and this is a hypothetical question, it's not the facts of this case, but suppose in the course of interviewing the mother, the officer had found out that the mother and father were separated, and that, in fact, the father had sole custody. I think this speaks to the Burke case, Burke v. County of Alameda, which was recently decided. And that case did, as of November 2009, clearly establish that somebody with physical custody has a If parents are separated, they have a right to be notified. They have a due process right. An interest in the care and custody of their child. And in that instance, yes, a call should have been made. And in the facts of this case, it's undisputed a call was made, in fact. So we're not asking for new law to be created here. Officer Prolo followed Welfare and Institutions Code section 305 to the T, which it's not being alleged here that it is in any way in conflict or unconstitutional against the Fourteenth Amendment. Roberts. If there are no more questions, thank you. Inglis, from the offices of Robert R. Powell, on behalf of the appellees. I think our position is well covered in our answering brief. I will just briefly address a few of counsel's points and then answer any questions you may have. Roberts, you address the factual point, your client's view of the facts, concerning the passage of time from the time the children are discovered at the shopping center, infant, 7-month-old infant locked in a car, warm day, and a decision is made to there's some investigation of some questioning of the mother, she's located, from there until the decision is made to turn the children over to the social worker as opposed to the parents or the father or the grandparents. Why don't you cover that period for us? Thank you, Your Honor. What's your view of the facts in that bracket? As I laid out in my answering brief at page 9, footnote 9, the — fortunately, in this case, the interview, the interrogation of the mother was caught on videotape, the entire thing. Here's — the children are already in the police station. The mother is clearly in the police station. Polo is in the police station. As the video shows and the transcript which we have prepared, which is in the excerpt to record beginning at 167, Polo tells Mrs. Fredenberg, well, your husband said he's not going to come, but apparently he's had a change of heart because he's here now. Now what's going to happen is the social worker is going to arrive. We are going to discuss this. A decision will be reached, and then we'll let you know whether the children are going to be removed from one of you or both of you. That last part, whether it was from one of you or both of you, was not stated, but that was what they're getting at, what's going to happen to these children. So your view of the facts is that at the point in time the decision was made to not allow either parent to have custody of the children, but to give them over to the police station, and willing to talk with authorities. Yes, absolutely. That is my answer, because that were those were Polo's words on the video, and given the summary judgment standard, I believe that's the interpretation we are entitled to, Your Honors. Okay. The constitutionality of Welfare and Institution Code 305 is not at issue because, frankly, we feel that it's irrelevant. As to your question to my two counsel here, Judge Hawkins, as to what evidence there was that the father was in any way involved in the abandonment of the children, the answer is zero evidence. There is none. Let me ask you a question. Well, if you're not through, I don't want to stop you, but I guess the big problem with me on this particular case is, well, not a problem, but I just need to ask you a question. It seems to me that Burke v. Alameda and Wallace both suggested that the father was in any way involved in the abandonment of the children, and they both said that the rights at stake here are not absolute. And Burke says, the Wallace test says that we must take into account the individual circumstances facing the official. Now, if that's the test, do we have a case dead on that suggests in this kind of a case that the father should have known when the statute itself doesn't talk about both parents, there's nothing else that talks about both parents, should have known at that time, Burke not decided, frankly, Mueller not decided, that he had a duty to go talk to the husband? Yes, Your Honor. First of all, Wallace, while the facts are different, the facts are worse. And Wallace said, yes, there is a duty to assess the rights of that other parent, which obviously would include. Facts are worse? The facts in Wallace are worse than the facts. The facts in Wallace are worse than the facts here, it seems. Here we're talking about horrendous judgment and neglect, not ritual sacrifice. But the rights involved to the parents are the same. I'm the innocent parent. There's no reason you should take my child away from me. That would be Matt Fredenberg in this particular case. Also, Burke. Well, but to be fair, my good colleague wrote what he wrote, which is the best language you have, in a footnote there. It is a footnote. And that footnote has been subject to some concern by our Court since. We don't know exactly what it says, so we're trying to apply it to the situation in front of us. And in Mueller, not with nearly as much judicial prowess as my colleague, but nonetheless, I came down that they didn't need to get the other parent's consent. Now we're talking about a police officer who's out there and only has Wallace in front of him. What says that his facts and individual circumstances make it absolutely applicable when we say the rights at stake here are not absolute? Wallace, Your Honor, makes it clear. Mabe also dealt with the situation. Let me ask you a question about that. Is your argument that it's, I wouldn't say absolutely clear is what you need for to say that the law is established, but let's leave that aside, and the question of whether things have to be identical. The basic question, it seems to me, is that Judge Smith is asking you a question of whether they had to contact the father. And as I understood, you said a few minutes ago, your dispute is that they had the father there and that the decision was made whether they had to contact the father or not. They had. He was there when they made the decision. And they had all the facts before them with the father present. Did I understand you to say that's when they made the decision? That is when Prolos said that he made the decision, Your Honor. So, yes, that is my decision. Well, then, does it really matter whether they had to contact the father or is the question whether when they had the father and the mother and the grandparents there, that then their decision as to whether they should turn the children, take them away from all of those people, is that? Now, I understand that your opponent doesn't agree that that's when the decision was made. Right. But as I understand your version of the facts in this unsummary judgment, the issue is when they do have contact with the father and they're all there, that then the decision that that's how we look at the decision in those circumstances, not in the circumstance of whether they had to contact the father. Right, Your Honor. I do believe that. Is that your view of the issue? Yes, Your Honor. I do believe the trying to make an issue of the contact of the father or lack of contact is a bit of a misdirection because, in fact, he was contacted. Right. But, yes, that correctly states my position on that issue. So if, in fact, he was contacted and he was there, is there any constitutional violation at all? That, I think, is my colleague's question. The violation? He is there. He was contacted. He was brought. I don't think there's a constitutional violation for not contacting him because he was contacted. I think the violation comes later when they tell him they are not releasing his children to him, Your Honor. Go ahead. You also mentioned the Burke case. Your Honor, I will speak to that briefly. Although Burke was decided in 2009, it dealt with facts that took place in 2005. So while the Burke case, the opinion was not available to Officer Prolo, when the court held in Burke that the law was clearly established in 2005, that obviously applies in 2006. Do you think Burke says the law was clearly established in 2005? It says it was clearly established for all but the noncustodial parent, which is not what we have here. We have a custodial parent. So as to Mr. Fredenberg, who had full custody rights, yes, it was clearly established. And then briefly, the Mueller case. I think the Mueller case is completely distinguishable because that was a life-or-death medical emergency. Do we give this kid medical examination and treatment right now or he might die? While one parent here says, please don't do that. That's not the fact. Those are not the facts of this case. The case is distinguishable and it's not controlled. So you distinguish Mueller simply because it was medical intervention? There was a documented and there was evidence in support of a medical need. There was a doctor saying we need to diagnose and potentially treat for meningitis within 40 minutes. Then you're not answering my question. You distinguish Mueller simply because it was a medical intervention? Because of the specific facts of the intervention, Your Honor. So, no, not just because it was medical, but because of the specific facts of the medical intervention in question in Mueller, Your Honor. Specific facts as to these children were certainly of that kind of intervention. I mean, one child was nearly fried. I mean, it was in a bad, bad way. The other children were sitting at the house. Absolutely, as to the mother, Your Honor. But she's not a plaintiff. She's not an appellee. Well, that was the same thing in the Mueller case. Only the mother was there. The difference, the distinction is that in Mueller they made a decision that one parent would go to the hospital and be in charge of making medical decisions. We do not have such a fact in this case, Your Honor. So it is distinguishable. If there's nothing further, I would submit on my pleadings, Your Honor. Thank you, counsel. I think your time probably ran, but we'll give you another minute. She has a little time. She has a little time. Allowance after she got another minute. Oh, that's right. I think I got double my time. This is like the Lakers playing the Celtics in Boston Gardens. Somebody always puts their finger on the clock. The Lakers need to catch up. I will be brief. Thank you, Your Honor. If there are no questions following my opponent's arguments, I'd like to just briefly touch on the second prong of qualified immunity, which is were the officer's actions reasonable under the circumstances? And, again, here what we're looking at is objective reasonableness. It's not subjective. It's would a reasonable officer in Officer Prollo's position have known in August of 2006 that finding abandoned kids, contacting a parent following 305. You see, the problem is we're talking about a dispute of facts. You're talking about a case in which he made the decision before the father was there, before the grandparents were there. And they're talking about a case in which he made the decision after they were all present and, as far as we know, capable of taking care of the children. Those are two different cases. And the case depends on when the officer made the decision, which case we're talking about. We're talking about the former. The officer. Well, if you're right about that at trial, you'll get a directed verdict. I would just like to point to the places in the record where I feel that show Officer Prollo made the decision before father arrived at the police station. So AF is seized at the parking lot. That is excerpts of record 93 and 100. The boys are seized when the officers pick them up at the home. That's excerpts of record 100 and 102. Prollo learns father's too busy to come to work and is refusing to come. That's excerpts of record 173. Prollo finishes his interview with Mrs. Fredenberg at 2.36 in the afternoon, which is on the videotape DVD. That's supplemental excerpts of record 182. And Prollo already made the decision to keep the children away from father when speaking to KF for the second time. That's found in supplemental excerpts of record 162. And then finally, Prollo briefs Social Worker Cortez on his decision to keep these kids in the parking lot. This isn't a very hard thing. We can examine the record. Your opponent says there are facts in the record that suggest the opposite. If that's all we're talking about, whether it's a – whether there is or is not a factual dispute, of course you're right if there isn't any factual dispute. It's your case. If we look at the facts of the record and there is a factual dispute, then it's their case. I would just like to close with this. If there is a factual dispute, what this Court can and should do is decide whether these disputed facts are material and relevant to the qualified immunity analysis. And I would just submit that on these facts, given what Officer Prollo knew at the time, a reasonable officer in his position would not have known that what he was doing was clearly incompetent or violative of the law. You mean if he knew that the father was there, the grandparents were there, they were perfectly capable of taking care of the child, that then the officer still wouldn't have known? Yes, Your Honor. That's what I'm saying based on 305. Okay. All right. Well, that's the second issue we need to resolve. Thank you very much. Thank you, Your Honor. The case is adjourned. You will be submitted.
judges: Reinhardt, Hawkins, Smith N. R.